UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------------- x

DAVID YARIEL RODRIGUEZ,                                  :
                                                         :
                              Plaintiff,                 :
                                                         :          **INITIAL REVIEW**
              -against-                                  :          **ORDER**
                                                         :
JANE DOE ASA, JANE DOE ASA, and STATE'S                  :          3:25-cv-2128 (MPS)
ATTORNEY WATSON,                                         :
                                                         :
                              Defendants.                x

----------------------------------------------------------------

Self-represented Plaintiff David Yariel Rodriguez is an unsentenced inmate currently housed at New Haven Correctional Center ("NHCC").[1] He filed a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 to assert claims for constitutional violations against two Connecticut Assistant State's Attorney ("ASA") Jane Does and State's Attorney Watson. ECF No. 1.[2]

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion

---

[1] The Connecticut DOC website reflects that Plaintiff is an unsentenced inmate charged with stealing a firearm and was last admitted to the Connecticut Department of Correction (DOC) on October 22, 2025. *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=367632. *See Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (Court may "take judicial notice of relevant matters of public record.").

[2] Plaintiff does not specify whether he sues the defendants in their official or individual capacities, but he requests both damages and official capacity relief. ECF No. 1 at 15. Plaintiff cannot seek monetary damages against the defendants (all state employees) in their official capacities because such claims are barred by the Eleventh Amendment. *See e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Nor may he proceed against the defendants for any injunctive or declaratory relief against any defendants in their official capacities. A plaintiff may only proceed for injunctive or declaratory relief against a defendant in his or her official capacity to the extent he alleges an ongoing constitutional violation. *See Va. Office for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 254–55 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)). Here, Plaintiff's allegations only describe conduct by the defendants in the past, and no allegations indicate any ongoing violations of his federal or constitutional rights.

of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. § 1915A.

I.      **FACTUAL BACKGROUND**

While the Court does not set forth all of the facts alleged in Plaintiff's complaint, it summarizes his basic factual allegations here to give context to its rulings below.

On October 9, 2023, Plaintiff was arrested and charged with possession of "burglary tools," interference with an officer, risk of injury to a child, and two counts of larceny. Compl. at 4.

On the next day, Plaintiff was brought to his arraignment where a Norwich ASA Doe stated that he was involved with the stealing of two dirt bikes, led the police on a car chase, risked the safety of a child, and was found in possession of burglary tools. *Id.* Plaintiff asserts that the Norwich ASA's statement was false and did not reflect the statements in the Connecticut State Police Report. *Id.* at 4-5. Plaintiff maintains that the Norwich ASA fabricated information "to prove probable cause." *Id.* at 5.

After he was given a court date later that month, Plaintiff made bail. *Id.*

At his court date, the ASA represented to the court that the State Police had collected evidence from the crime scene, namely a cell phone and a pair of gloves. *Id.* Video cameras from the crime scene showed a person—who was stealing the two dirt bikes—drop a cell phone and gloves. *Id.*

Plaintiff knew the gloves and cell phone would prove his innocence and begged the State to conduct forensic analysis on the evidence. *Id.* The State refused to do so. *Id.*

Plaintiff advised that he had photographs, videos, and witness statements to prove that he did not commit the crimes described by the Norwich ASA. *Id.* at 6. After collecting evidence from

the crime scene, the State Police held the evidence for about three days and then returned the evidence to the victim of the theft, even though the cell phone and gloves belonged to the suspect. *Id.* at 6-7. The victim of the theft emailed the Norwich ASA to inquire if the ASA was going to recollect the gloves and cell phone that the victim received. *Id.* at 7. The ASA declined to do so. *Id.*

Plaintiff believes that the State conducted a DNA test on the gloves and cell phone and sent the evidence to the victim after a determination that Plaintiff was not the proper suspect. *Id.* at 7. He maintains that he was denied the opportunity to prove his innocence because the ASA was keeping quiet about the State's return of the evidence to the victim. *See id.* at 6-7.

Despite her alleged awareness that the evidence was returned to the victim and contaminated, the Norwich ASA Doe continued to represent that the gloves and cell phone belonged to Plaintiff. *Id.* at 7. He alleges that she intentionally withheld this exculpatory evidence and fabricated inculpatory evidence when she made her statements to the superior court about his criminal conduct at his arraignment. *Id.* at 8.

In July 2024, Plaintiff's criminal case was moved to state superior court in New Britain. *Id.* at 5, 8. In New Britain, Supervising State's Attorney Watson reviewed Plaintiff's case concerning his charges from October 9, 2023, and determined that the gloves, cell phone, and video footage had been lost. *Id.* at 9.

Although Plaintiff attempted to show his innocence based on his cell phone location, ASA Doe represented to the superior court in New Britain that the cell phone and gloves found at the crime scene were believed to belong to Plaintiff. *Id.* at 9.

In October 2024, the State's Attorney in New Britain offered Plaintiff a plea agreement if he pleaded guilty to larceny in the second degree and violation of his probation. *Id.* at 10. Plaintiff

3

refused to enter into the plea agreement because he knew the evidence—the gloves and cell phone— would prove him to be not guilty. *Id.* He offered videos and photographs and witness statements that showed he was at his friend's party—and not at the crime scene—at the time of the crime. *Id.*

After he was permitted to represent himself, Plaintiff filed a motion for a bill of particulars, a motion to run DNA on all collected exculpatory evidence, and a request to show GPS location of the cellular phone. *Id.* at 12.

On May 27, 2025, after twenty months of prosecution, the State's Attorney stated on the record:

> The state hereby dismisses all charges against the defendant. It seems after review of the case evidence has gone missing and we no longer believe we have enough to prosecute. We believe he might not be the suspect of the crime.

*Id.*

## II.   <u>DISCUSSION</u>

"Section 1983 provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert,* 526 U.S. 286, 290 (1999) (citing 42 U.S.C. § 1983). A plaintiff must show a violation of a federally protected constitutional or statutory right which was the result of state action, or action "under color of law." *See Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir. 1994).

Plaintiff seeks to hold the defendants liable for malicious prosecution under the Fourth Amendment, *see Chiaverini v. City of Napoleon*, 602 U.S. 556, 562 (2024) (noting "constitutional violation alleged in [malicious prosecution] suit is a type of unreasonable seizure" under the Fourth Amendment); violation of his right to call witnesses under the Sixth Amendment; and violation of his rights under the Fourteenth Amendment Due Process Clause.

4

Compl. at 6, 8. He primarily complains that the defendants withheld exculpatory evidence and fabricated inculpatory evidence. *See* Compl., *generally*.

Plaintiff's claims for damages against the defendants arise from their conduct in prosecuting his criminal case for the State and are barred by prosecutorial immunity.

"The doctrine of absolute immunity applies broadly to shield a prosecutor from liability for money damages (but not injunctive relief) in a § 1983 lawsuit, even when the result may be that a wronged plaintiff is left without an immediate remedy." *Anilao v. Spota*, 27 F.4th 855, 863 (2d Cir. 2022). It provides immunity from suit for "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Id.* at 864 (quoting *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995)). A prosecutorial supervisor is entitled to absolute immunity for failure to provide supervision and training "directly connected with the conduct of a trial." *See Van De Kamp v. Goldstein*, 555 U.S. 335, 344-46 (2009).

Absolute immunity protects even "reprehensible" prosecutorial misconduct committed in the course of performing the advocacy function. *Anilao*, 27 F.4th at 867 (collecting cases). Absolute immunity applies where a prosecutor "'conspir[es] to present false evidence at a criminal trial.'" *Id.* at 864 (quoting *Dory v. Ryan*, 25 F.3d 81, 83 (2014)). "'The fact that such a conspiracy is certainly not something that is *properly* within the role of a prosecutor is immaterial, because the immunity attaches to his function, not to the manner in which he performed it.'" *Id.* (quoting *Dory*, 25 F.3d at 83).

In assessing whether a defendant is covered by absolute immunity for acts taken while serving as a prosecutor, the court "take[s] a 'functional approach,' examining 'the nature of the function performed, not the identity of the actor who performed it.'" *Simon v. City of New York*, 727 F.3d 167, 171 (2d Cir. 2013) (quoting *Buckley*, 509 U.S. 259, 269 (1993); *see also Flagler v.*

*Trainor*, 663 F.3d 543, 547 (2d Cir. 2011) ("[I]mmunity is not a function of the prosecutor's *title*. Rather, it attaches to prosecutorial functions that are intimately associated with initiating or presenting the State's case.").

Absolute prosecutorial immunity extends only to a prosecutor's acts "in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State…." *Buckley*, 509 U.S. at 273; *Malik v. City of New York*, 841 F. App'x 281, 284 (2d Cir. 2021) (summary order). But absolute immunity does not extend to "administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings." *Warney v. Monroe Cnty.*, 587 F.3d 113, 121 (2d Cir. 2009) (quoting *Buckley*, 509 U.S. at 273).

"The Supreme Court has identified evaluating evidence and interviewing witnesses as falling on the absolute immunity side of the line, leaving 'searching for the clues and corroboration' that might lead to a recommendation for an arrest on the qualified immunity side." *Giraldo*, 694 F.3d at 166 (quoting *Buckley,* 509 U.S. at 273) (other citation omitted). Thus, "investigative acts reasonably related to decisions whether or not to begin or to carry on a particular criminal prosecution, or to defend a conviction, are shielded by absolute immunity when done by prosecutors." *Id.* But "investigative acts that are entitled to only qualified immunity are those undertaken in the phase of law enforcement that involves the gathering and piecing together of evidence for indications of criminal activities and determination of the perpetrators." *Id.* (citing *Smith*, 147 F.3d at 94); *see also Simon*, 727 F.3d at 172 ("Investigation, arrest, and detention have historically and by precedent been regarded as the work of police, not prosecutors, and they do not become prosecutorial functions merely because a prosecutor has chosen to participate." (internal citation omitted)).

Here, Plaintiff challenges ASA Doe's presentation of charges against him, her representation of the state police report to the superior court at his arraignment in Norwich, and the decisions of the defendants to continue the prosecution of the charges against him despite his claim of innocence and their asserted knowledge about the evidence in the case. *See* Compl. at 4, 7-10. This conduct is shielded by absolute immunity, which applies to a prosecutor's conduct about "whether to file an information, whether and when to prosecute, whether to dismiss an indictment against particular defendants, which witnesses to call, and what other evidence to present." *Giraldo*, 694 F.3d at 165 (quoting *Imbler*, 424 U.S. at 431 n.33); *see Simon*, 727 F.3d at 171 (noting that absolute prosecutorial immunity extends to prosecutors' decisions to bring charges and present a case to a grand jury, "along with the tasks generally considered adjunct to those functions, such as witness preparation, witness selection, and issuing subpoenas").

Plaintiff complains about the defendants' failure to disclose exculpatory evidence, which stymied his ability to present witnesses. Compl. at 8-11. But deciding what evidence to turn over is a prosecutorial function, *see Hill v. City of N.Y.*, 45 F.3d 653, 662 (2d Cir. 1995) (failure to turn over *Brady* material protected as discretionary advocacy function); *Kweller v. County of Broome*, 2025 WL 2719897, at *13 (N.D.N.Y. Sept. 24, 2025) (failure to identify and disclose exculpatory evidence is advocacy function to which absolute immunity ordinarily attaches), *reconsideration denied*, 2025 WL 3280745 (N.D.N.Y. Nov. 25, 2025). Thus, the defendants are "absolutely immune from liability under § 1983 for [*Brady*] violations," *McClean v. County of Westchester*, 2018 WL 6329420, at *9 (S.D.N.Y. Dec. 3, 2018), *aff'd sub nom. McClean v. City of Mount Vernon*, 776 F. App'x 725 (2d Cir. 2019) (summary order).

Because Plaintiff's claims of constitutional violation arise from the defendants' "conduct in furtherance of prosecutorial functions that are intimately associated with initiating or

presenting the State's case," *Flagler*, 663 F.3d at 546, the defendants are immune from suit. All the claims against the defendants are thus dismissed with prejudice under 28 U.S.C. § 1915A(b)(1), (2).

The Court understands Plaintiff's frustration, as expressed in the complaint. If what he alleges was true, he lost job opportunities, and his family relationships suffered because prosecutors either negligently or deliberately failed to do their jobs properly. Unfortunately for the plaintiff, this is the cost of the rule of absolute immunity that applies to the prosecutorial function. The cost to society of not having such a rule would be that prosecutors would be reluctant or unwilling to advocate zealously on behalf of crime victims and the State lest they face liability for making mistakes. The Supreme Court has decided that the need to avoid the latter cost outweighs the potential injustice that may sometimes be visited on individuals like the plaintiff.

## III.    CONCLUSION

Plaintiff's complaint is dismissed. *See* 28 U.S.C. § 1915A(b)(1), (2).

The clerk is instructed to close this case.

_____/s/_____
Michael P. Shea
United States District Judge

**SO ORDERED** this 24th day of March 2026, at Hartford, Connecticut.